IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:20-cr-00095

DERRICK LEE RACER

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant's Motion to Suppress [ECF No. 38] and Defendant's Motion to Seal [ECF No. 39] Exhibit B to his Motion to Suppress. For the reasons that follow, the Motion to Suppress [ECF No. 38] is **DENIED** and the Motion to Seal [ECF No. 39] is **GRANTED**.

I.  Background

Just before midnight on March 2, 2020, Officer Matthew Cooper of the Saint Albans Police Department observed Defendant Derrick Racker riding his bicycle down a Saint Albans street without a helmet. Because Saint Albans has an ordinance requiring helmets "from dusk to dawn," Officer Cooper initiated a traffic stop. Municipal Ord., Saint Albans, West Virginia, 2018-08, § 303.20(l). Officer Cooper was in uniform and driving a marked SUV at the time. He did not have a body camera.

When Officer Cooper approached Defendant, he discussed the purpose of the stop and asked Defendant if he had any firearms* on his person. Defendant answered that he did have a firearm. Defendant also told Officer that he was not allowed to possess the firearm. After this initial interaction, two other officers from the Saint Albans Police Department arrived. Defendant was arrested for being a felon in possession of a firearm and was transported to the Saint Albans police station where he was processed. Defendant was read his *Miranda* warnings, signed a waiver of those rights, and gave a statement to officers confirming that he knew he was not permitted to possess the firearm due to a prior felony conviction in West Virginia.

On June 23, 2020, a federal grandy jury returned a single-count indictment against Defendant charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

## II. Motion to Suppress

Defendant now seeks to suppress the firearm recovered from his person at the stop and the inculpatory statements attributed to him during the stop, the arrest, and the processing at the police department. [ECF No. 38]. Defendant argues that Officer Cooper violated his Fourth Amendment rights by extending the traffic stop to ask whether he possessed any weapons. He further argues that Officer Cooper violated his Fifth Amendment rights by questioning him at the stop without *Miranda* warnings.

---

* It is unclear whether Officer Cooper asked if Defendant possessed any "firearms," or if he possessed any "weapons." I do not find the terminology used in this instance to be decisive. However, I will presume Defendant is correct when he says Officer Cooper asked about "firearms."

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005). The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson,* 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974).

### A. Defendant's Fourth Amendment Claim

It is well-settled that a traffic stop constitutes a seizure and thus implicates the Fourth Amendment. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015). To determine whether an officer's actions during a traffic stop are reasonable, "[courts] apply the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), wherein the court asks (1) if the stop was 'legitimate at its inception,' *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017), and (2) if 'the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop,' *Williams*, 808 F.3d at 245." *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018).

Taking these principles into account, in this case, the officer asked a single question that Defendant claims violated his rights—whether Defendant was carrying any firearms. There is no dispute that the stop in this case was "legitimate at its inception" because Officer Cooper witnessed Defendant violating the helmet ordinance. Therefore, the question before the court is whether Officer Cooper's

3

question was related to the mission of the stop. If the question was not related to the mission of the stop, then I must determine whether it unlawfully prolonged the stop.

The United States Supreme Court has made clear that because "traffic stops are 'especially fraught with danger to police officers,'" an officer "may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez*, 575 U.S. at 356 (quoting *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)). "Unlike a general interest in criminal enforcement, however, the government's officer safety interest stems from the mission of the stop itself." *Id.* For instance, an officer may order the driver out of the car for safety purposes because officer safety weighs greater than the "'de minimis' additional intrusion of requiring a driver, lawfully stopped, to exit a vehicle." *Id.* (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977)); *see also Maryland v. Wilson*, 519 U.S. 408, 413–15 (expanding *Mimms* to include all passengers).

In this case, the officer asked the single question of whether defendant was carrying any firearms. Defendant argues that the question went beyond the scope of the stop. According to Defendant, Officer Cooper had all the information he needed to assess the helmet violation before he even approached Defendant—Officer Cooper saw Defendant riding his bicycle without a helmet, and Defendant did not need a license, insurance, or registration to ride the bicycle; therefore, Officer Cooper had nothing to investigate when he made the stop. [ECF No. 38, at 9–10]. As the Government points out, however, this argument ignores the fact that Officer Cooper

needed to identify and interact with Defendant and inform him of the reason for the stop.

Courts have already recognized the authority of "officers conducting a traffic stop [to] inquire about dangerous weapons." *United States v. Everett*, 601 F.3d 484, 495 (6th Cir. 2010) ("[I]t would be irrational to conclude that officers cannot take the 'less intrusive [measure]' of 'simply [asking] whether a driver has a gun.'"); *see also Johnson*, 555 U.S. at 327 (finding that a stop, which included the officer asking if there were any weapons in the vehicle, was a legitimate stop). The single question in this case is certainly less intrusive than ordering the driver and passengers out of the car. *See Mimms*, 434 U.S. at 110–11; *see also Wilson*, 519 U.S. at 413–15. As another court has reasoned, "If a police officer may, in the interest of officer safety, order all occupants out of the vehicle for the duration of the stop without violating the Fourth Amendment, the officer may take a less burdensome precaution to ensure officer safety." *State v. Wright*, 2019 WI 45, 926 N.W.2d 157, 163. I have previously considered very similar circumstances. *See United States v. Buzzard*, 395 F.Supp.3d 750 (S.D. W. Va. 2019). In *Buzzard*, the officer conducted a lawful traffic stop and asked a single question that Mr. Buzzard claimed unlawfully prolonged the stop—whether there was anything illegal in the vehicle. *Id.* at 753. In that case, I held, as I do here, that the question was nonintrusive and related to officer safety, and was part of the mission of the stop.

Because the question asked here, whether Defendant had any firearms, is perhaps the most basic of inquiries related to officer safety, I find that it was related

to the mission of the stop itself and does not violate the Fourth Amendment. *See Rodriguez*, 575 U.S. at 355.

### B. Defendant's Fifth Amendment Claim

Defendant also argues that Officer Cooper violated his Fifth Amendment right by asking him whether he had any firearms during the stop. According to Defendant, "[t]hese custodial statements were obtained through interrogation and are what prompted [Officer] Cooper to arrest" Defendant. [ECF No. 38, at 6]. Defendant argues that because he had not been read his *Miranda* warnings when he told Officer Cooper he had the gun, the question violated his Fifth Amendment rights and his statement should be suppressed.

When statements stem from custodial interrogation of a defendant, they are inadmissible unless the government can demonstrate "the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Thus, when a person is subjected to a custodial interrogation, "*Miranda* warnings" are required. *See United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995).

Importantly, the United States Supreme Court has held that "*Miranda* warnings are not required when a person is questioned during a routine traffic stop or a [*Terry*] stop." *Leshuk*, 65 F.3d at 1108 (citing *Berkemer v. McCarty*, 468 U.S. 420, 437–432 (1984)). "A brief but complete restriction of liberty is valid under *Terry*"

and does not convert the stop into a custodial arrest. *United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir. 1987). In fact, *Terry* stops customarily involve "detentions where the person detained is not technically free to leave while the officer pursues the investigation." *Leshuk*, 65 F.3d at 1109 (quoting *United States v. Manbeck,* 744 F.2d 360, 376–77 (4th Cir.1984), *cert. denied,* 469 U.S. 1217 (1985)). "Instead of being distinguished by the absence of any restriction of liberty, *Terry* stops differ from custodial interrogation in that they must last no longer than necessary to verify or dispel the officer's suspicion." *Leshuk*, 65 F.3d at 1109.

Here, I have already held that Officer Cooper asking Defendant if he had any firearms was part of the mission of the stop and, therefore, did not unreasonably extend the stop or take it out of the realm of a routine *Terry*-type traffic stop. There is no dispute that Officer Cooper asked the question and defendant answered that he had the firearm during the initial traffic stop. Therefore, because that interaction was part of a routine stop, no *Miranda* warnings were required and the statement need not be suppressed. Further, there is no dispute that when Defendant made his statement at the Saint Albans police station, he had been read his *Miranda* warnings and had signed a waiver. Therefore, the is no basis upon which to suppress that statement.

### C. Conclusion

Defendant's Motion to Suppress [ECF No. 38] is **DENIED**.

7

### III. Motion to Seal

Also pending is Defendant's Motion to Seal [ECF No. 39] Exhibit B to his Motion to Suppress [ECF No. 38]. Because Exhibit B contains grand jury testimony not intended for public disclosure, the Motion [ECF No. 39] is **GRANTED**.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress [ECF No. 38] is **DENIED**. Defendant's Motion to Seal [ECF No. 39] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: April 9, 2021

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE